**Walter A. READ, Plaintiff,**

v.

**LOCAL LODGE 1284, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, and S. J. Bazela, Local Chairman Local Lodge 1284, I.A.M., Defendants.**

Civ. A. No. 4725.

United States District Court,
D. Delaware.

Oct. 25, 1974.

Alfred J. Lindh, Wise, Lindh, Mekler & Evans, Wilmington, Del., for plaintiff; Seymour J. Spelman, Alan D. Eisenberg, Paul J. Cherner, Spelman & Wagner, Arlington, Va., of counsel.

John Biggs, III, Biggs & Battaglia, Wilmington, Del., for defendants; Robert C. Cohen, and Richard Kirschner, Philadelphia, Pa., of counsel.

OPINION

EDWIN D. STEEL, Jr., Senior District Judge:

Plaintiff brought an action against Local Lodge 1284, International Association of Machinists and Aerospace Work-

ers, AFL–CIO, of which plaintiff is a member, and S. J. Bazela, Local Chairman, Local Lodge 1284, IAM, to recover damages resulting from an injury which he sustained in the course of his employment for the Penn Central Transportation Company. The union is the exclusive bargaining representative of Penn Central employees, including plaintiff, under § 2, Fourth, of the Railway Labor Act, 45 U.S.C. § 152, Fourth, and is a party to a collective bargaining agreement between it and the Penn Central. Bazela is the officer and agent of Local 1284 who was authorized to represent employees for purposes of processing grievances. The theory of the action is that the defendants[1] owed a duty to represent plaintiff fairly in connection with a "grievance" which he claims to have had against the Penn Central in connection with an improper job assignment, that it breached this duty, and that the breach was the proximate cause of plaintiff's injury.[2] Jurisdiction exists under 28 U.S.C. § 1337, Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187 (1944), and 28 U.S.C. § 1331, Rumbaugh v. Winifrede R. Co., 331 F.2d 530 (4th Cir. 1964), cert. denied, 379 U.S. 929, 85 S.Ct. 322, 13 L.Ed.2d 341 (1964).

The parties have each moved for summary judgment upon the ground that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The litigation arose out of the following situation:

On September 11, 1970, the plaintiff was an employee of the Penn Central Transportation Company and was working in the capacity of a journeyman machinist at the railroad shop in Wilmington, Delaware. His main job was to run a drill press. Between 10:30 and 11:00 in the morning when plaintiff was running his drill press, his supervisor, Mr.

Hartman, told plaintiff to take the brake hangars which he was then working on off the drill press, go to the end of the shop, and carry back 12 spring hangars which weighed about 56 pounds each. Plaintiff objected to this work order claiming that it was not within his craft classification and that it was not safe for him to perform. Plaintiff therefore refused to transport the hangars, told Hartman that transporting spring hangars was not his job, that he wanted to finish his work, and that he was going to see his committeeman, Mr. Bazela. There is no evidence in the record that plaintiff told Hartman that the job was a dangerous one for him to perform. It will be assumed, however, that Hartman knew this since he was aware of plaintiff's existing weakened back condition which resulted from an earlier severe sprain for which plaintiff had to receive treatment at the Industrial Hospital. Hartman made no response to the plaintiff's objection to performing the job and left the scene.

Plaintiff then went to see the defendant, Mr. Bazela, his committeeman, and told him that he had a grievance because Mr. Hartman wanted him to carry spring hangars which was not his job. Mr. Bazela returned to the machine shop with plaintiff and looked at the hangars. Bazela then said, "If the boss says to do it, you have to do it", and left the room. Bazela did nothing further with reference to plaintiff's grievance and made no effort whatever to speak to Hartman about it.

After speaking with Bazela, plaintiff carried each of the 12 spring hangars, one at a time, a distance of 90–95 feet across the machine shop, even though the hangars were already loaded on a pallet and should have been transported by the forklift. In doing so plaintiff severely injured his lower back and has permanent recurring pain whenever he bends or lifts anything. Since the inju-

---

1. The union will be dealt with in the opinion as if it were the sole defendant, as Bazela's liability can be no greater than the union's.

2. Plaintiff brought a prior action against the Penn Central in the Eastern District of Pennsylvania for the same injury based upon its negligence. This was settled for $15,000.

ry plaintiff has been unable to work. Plaintiff asserts that "[i]f Mr. Bazela would have properly represented me, I would not have been forced to do the work, the injury would not have occurred, and I would not have had to retire."

Later, plaintiff spoke to White, the union's division chairman, on four different occasions concerning his grievance, but White refused to help him. He also told DiMedio, the local president, about the incident but he, too, would not represent the plaintiff. Obviously the unresponsiveness of the union to these conversations, occurring as they did after plaintiff was injured, could not have contributed to it.

The doctrine of fair representation arising under the Railway Labor Act was initially established by the Supreme Court in the context of racial discrimination. See, for example, Steele v. Louisville & N. R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Thereafter, in Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953) the Supreme Court held that unions' ". . . statutory obligation [under the N.L.R.A.] to represent all members of an appropriate unit requires them to make an honest effort to serve the interests of all of those members, without hostility to any." Eleven years later, in Humphrey v. Moore, 375 U.S. 335, 350, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964), the Court further defined the standard, stating in a case under the L.M.R.A., that a union must take ". . . its position honestly, in good faith, and without hostility or arbitrary discrimination", and that the duty is satisfied if it had "acted upon wholly relevant considerations, not upon capricious or arbitrary factors." Id. An extensive articulation of the doctrine in the context of grievance enforcement is found in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). There, the Court held that while an employee does not have an absolute right to have his grievance taken through the grievance procedure, a union may not ". . . arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion. . . ." Id. at 191, 87 S.Ct. at 917. In order to prove a breach of a union's duty of fair representation, the Court declared (id. at 190, 87 S.Ct. at 916), the employee must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." These cases were cited in Brady v. Trans World Airlines, Inc., 401 F.2d 87 (3rd Cir. 1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969) where the Court stated that the duty of fair representation which a union owed to employees by virtue of its position as an exclusive bargaining agent was a "fiduciary" one.

The instant case was initially argued on the issue whether the union acted arbitrarily, discriminatorily and in bad faith when after plaintiff reported his grievance to Bazela the latter failed to approach Hartman and object to the work order and failed to direct plaintiff not to do the work. Later, the Court called to the attention of the attorneys that the statute of limitations had been pleaded as a "sixth defense", and considering that it might be a bar, asked the parties to brief the point. They have now done so.

■■ Plaintiff was injured on September 11, 1970. The action was filed on September 7, 1973. The action was timely if, as plaintiff contends, the three year statute found in 10 Del.C. § 8106 is applicable; it was barred if the two year statute fixed by 10 Del.C. § 8118 is applicable. Section 8106 provides in pertinent part:

". . . no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of action; subject, however, to the provisions of section[s] . . . 8118 . . . of this title."

Section 8118 reads:

"No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained; . . . ." subject to an exception not presently relevant.

Plaintiff's argument that § 8106 is controlling rests quite properly upon the theory that the National Railway Act is the source of the union's duty of fair representation of its employees. Hence plaintiff asserts, the cause of action is "based on a statute" within the meaning of § 8106. This may be conceded. It does not necessarily follow, however, that the three year provision of § 8106 is governing in this case rather than the two year limitation of § 8118. Plaintiff fails to note that § 8106 is expressly made subject to the terms of § 8118. The interrelation between these two sections was the subject of discussion in Lunn v. United Aircraft Corporation, 182 F.Supp. 12 (D.Del.1960). There plaintiff contended that his claim to recover for personal injuries sustained by a deceased person was "based on a statute"[3] and therefore was subject to the three year limitation of § 8106 rather than the one year[4] limitation of § 8118. This contention, the Court held, was unsound from two view points: first, because the cause of action was not based upon a statute; and second, because:

"The Statute relied upon (10 Del.C. § 8106) has appended to it the express provision 'subject, however, to the provisions of sections 8107–8109 and 8118 of this title.' This clearly shows that the action for personal injuries embraced within Section 8118 is not within the provisions of the three year limitation provided by Section 8106."

McNeill v. Tarumianz, 138 F.Supp. 713 (D.Del.1956) is relevant to plaintiff's argument that the cause of action involves an "injury unaccompanied by force" and hence is limited by § 8106 and not § 8118. There the Court held that an action for libel was barred by § 8118. In rejecting the plaintiff's contention that § 8106 was applicable the Court said at p. 715:

"Plaintiff is correct in her assertion that injuries for libel and slander are within the meaning of '[injuries] unaccompanied with force or resulting indirectly from the acts of the defendant.' However, the problem remains as to whether libel and slander are 'personal injuries' within the meaning of 10 Delaware Code, Section 8118, which provision is specifically set forth as a controlling exception to the general three year limitation period of 10 Delaware Code, Section 8106. If libel and slander are 'personal injuries' within the meaning of 10 Delaware Code, Section 8118, the plaintiff is unable to recover since suit was not commenced within one year[5] from the accrual of the cause of action."

In holding that libel and slander were "personal injuries" within the meaning of § 8118, the Court said at 716:

"An examination of the various limitation statutes of Delaware does not indicate any legislative intent to restrict the statute barring actions for personal injuries commenced more than one year after the date they accrue to any particular kind of personal injury. The statute is plain and unambiguous. It creates no exceptions and the court is not justified in departing from the language of the statute and reading into it some qualification or exception which the Legislature did not provide. The Delaware statute is no longer concerned with the form of action and is not limited

---

3. 10 Del.C. § 3701, the Delaware Survival Statute.

4. The Delaware personal injury statute of limitations was changed from one year to two years during 1960 by 52 Del.Laws, ch. 339.

5. See note 4 *supra*, p. 779.

to injuries caused in any particular manner, but plainly covers all actions for recovery of damages upon a claim for personal injuries whatever the nature of the personal injury."

The Court then stated that whether actions of libel and slander were "personal injuries" under § 8118 depended upon the principle of the common law in force at the time when the statute was enacted. After considering the authorities on the point it held that an action of libel and slander was embraced within the statutory term.

If an action for libel and slander is comprehended within the phrase "personal injuries" *a fortiori* this must be true of the cause of action alleged in the instant complaint. Paragraph 9 alleges that when plaintiff lifted the spring hangars:

"  .   .   .  plaintiff received severe injuries to his back. As a result of these injuries, plaintiff has suffered great physical and mental pain which has required the incurring of expense for medicine, medical attendance, and hospitalization. These injuries have also caused plaintiff's employment to be permanently terminated, resulting in the loss of annual earnings and the diminution of pension benefits."

The instant case is obviously one for the "recovery of damages upon a claim for alleged personal injuries" within the meaning of § 8118. The two year period of limitations specified in that section is a bar to the action. Hood v. McConemy, 53 F.R.D. 435 (D.Del.1971), relied upon by plaintiff is inapposite. It simply held that an action for legal malpractice did not involve an injury to personal property to which the two year statute of limitations of § 8106A applied since § 8106A was limited to injuries to personal property accompanied by force. If the case can be read as suggesting that § 8118 was inapplicable to a personal injury unless it was accompanied by force, the statement is dictum for § 8118 was not even remotely involved in the case. Furthermore, any such interpretation of § 8118 is inconsistent with the more cogent construction which was placed upon it in McNeill v. Tarumianz, *supra.*

The defendants' motion for summary judgment is granted and that of the plaintiff denied.