L. R. HIATT et al., Plaintiffs-Appellants,

v.

NEW YORK CENTRAL RAILROAD COMPANY and Brotherhood of Railroad Trainmen, Defendants-Appellees.

No. 18453.

United States Court of Appeals, Seventh Circuit.

June 18, 1971.

George Rose, Indianapolis, Ind., for plaintiffs-appellants.

John P. Price, Karl J. Stipher, Ralph Hamill, Thomas J. Carroll, Indianapolis, Ind., for defendants-appellees.

Before DUFFY, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and GRANT, District Judge.*

GRANT, District Judge.

Plaintiffs-Appellants appeal from the District Court's judgment holding that the Defendants-Appellees did not conspire to engage in, nor had they engaged in, hostile discrimination towards Plaintiffs to deprive them of the benefits of their seniority with the Defendant Railroad.

Plaintiffs, at the time of the alleged wrong, were members of the Defendant Union employed as switchtenders in the Defendant Railroad's switchyard. During the summer of 1960, the Railroad opened a new, automated switching facility and gradually phased out their operation at the older, manually controlled yard. Pursuant to a Memorandum Agreement between the Railroad and the Union, Plaintiffs were notified that no switchtender jobs would be available at the new yard but that Plaintiffs would be permitted to qualify as brakemen in the new yard and be accorded retroactively applied seniority rights. All but

* Judge Grant sitting by designation.

one of the Plaintiffs refused the opportunity and were ultimately furloughed from their jobs retaining their old seniority rights in the terminated occupation of switchtender.

Plaintiffs contend that, based upon the operative Schedule Agreement, and functionally in terms of their work experience, they were within the category of employees known as "yardmen" to whom openings in the new facility were made exclusively. Further, they allege that certain positions at the new yard require skills for which their experience as switchtenders made them qualified, and that their exclusion from employment in the new yard is the result of individual and/or joint hostile discrimination on the part(s) of Defendant(s).

Plaintiffs-Appellants here essentially ask us to accept their construction and interpretation of the Schedule Agreement and work duties while ignoring evidence unfavorable to their position. We are unable to comply, and we find that the record sustains the findings and conclusions of the District Court.

■ Under the Railway Labor Act, Title 45, U.S.C. § 151 et seq., a union has an obligation to deal fairly with all of the interests represented in its membership. Its statutory powers are so extensive as to be compared with a legislature and, like a legislature, the union is under a duty to exercise its prerogatives in a temperate manner, protecting the interests of the minority as well as the majority. Steele v. Louisville & N. R. Co., 323 U.S. 192, 202, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The obligation also extends to an employer where a deliberate attempt is made (along with the Union) to discriminate unfairly against certain of its employees. This does not mean that agreements may not be made which have an adverse effect upon some employee-union members. Distinctions may be made with respect to seniority, the type of work performed, and the competence and skill with which it is performed as long as the variations are "* * * based on differences relevant to the authorized purposes of the contract * * *". Steele, supra, at p. 203, 65 S.Ct. at p. 232.

■ The District Court correctly found that the Schedule Agreement clearly established distinctions between the Appellants' job classification and those denominated "yardmen", the latter including brakemen, conductors, and car retarders. The differences were directly related to the nature of the work as reflected in the testimony. The fact that there was evidence of some overlapping in function and certain common contractual provisions as to conductors, brakemen, car retarders, and switchtenders did not compel a finding that there was no reasonable basis for distinguishing among these substantially different endeavors. The later Memorandum Agreement appears to be consistent with the Schedule Agreement's work classifications.

■ Appellees do not dispute the fact that the move to the new railroad yard resulted in the loss of Appellants' jobs. However, the termination of employment alone will not support a finding of hostile discrimination. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Appellants are required to demonstrate that their exclusion was based in bad faith arbitrariness. "Something akin to factual malice is necessary." Cunningham v. Erie R. R., 266 F.2d 411, 417 (2nd Cir. 1959). No such showing is made by the Appellants; on the contrary, the Memorandum Agreement offered the Appellants an opportunity to upgrade themselves to qualify for the more technically sophisticated employment at the new yard while retaining some seniority rights. The findings of the District Court are not clearly erroneous.

Accordingly, we hold that the judgment of the District Court is affirmed.