**William LARKIN, Individually and on behalf of others similarly situated, Plaintiffs,**

v.

**UNITED STEELWORKERS OF AMERICA et al., Defendants.**

**Civ. A. No. 74–404.**

United States District Court, W. D. Pennsylvania.

March 22, 1976.

**1138**

Clyde G. Tempest, Salvatore F. Panepinto, Monongahela, Pa., for plaintiffs.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., for defendant, United Steelworkers of America.

James T. Carney, Pittsburgh, Pa., S. G. Clark, Jr., Gen. Atty., Labor, Pittsburgh, Pa., for defendant, U. S. Steel Corp.

## OPINION

GOURLEY, Senior District Judge:

This is a civil non jury proceeding filed by the plaintiff, William Larkin, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e et seq. The plaintiff, William Larkin, a black man, brought this civil rights action in behalf of himself and others similarly situated against the defendants, United Steelworkers of America, United Steelworkers of America, AFL–CIO, Local No. 1557, and United States Steel Corporation. The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel. Based thereon, it is the considered judgment of the Court, that the defendants committed no discriminatory employment practices against the plaintiff and accordingly, plaintiff is entitled to no relief.

This suit was originally filed by the plaintiff as a class action on behalf of himself and other minority group members of defendant, Local Union, who have the right to file meritorious grievances and to have said complaints processed through arbitration in accordance with the provisions of the Agreement between the United Steelworkers of America and the United States Steel Corporation. The Court is compelled to deny this request since plaintiff never made a showing of the specific claims of a sufficient number of those purported to be class members, as required by the Federal Rule of Civil Procedure 23(a) 1, 2, and 3.

The facts may be briefly stated. The plaintiff, William Larkin, a black man, is an employee of the defendant, United States Steel Corporation, and is a member of United Steelworkers of America and a member of the United Steelworkers of America, AFL–CIO, Local No. 1557. The plaintiff began his employment with the defendant, United States Steel Corporation, on September 19, 1951, where he worked in Seniority Unit 22–22″ Mill Shearing and Straightening in the Rolling Department until August 25, 1962. On November 5, 1963, following a year layoff, plaintiff was transferred to his present position in Seniority Unit 16–18″ Mill Shearing and Straightening in the Rolling Department.

In 1966, John Hyjurick, a white man, who is also employed by the defendant company and a member of defendant, United Steelworkers of America, and a member of defendant, United Steelworkers of America, AFL–CIO, Local No. 1557, was transferred into Seniority Unit 16–18″ Mill Shearing and Straightening.

John Hyjurick began his employment with the defendant company on July 25, 1941, in the Rolling Department in Seniority Unit 9–40–28″ Mill Rolling and Shearing. However, in 1960, when the defendant company decided to cease operations in that particular unit, Hyjurick was placed on layoff. Later, when the company decided to permanently shut down the unit in 1962, Hyjurick was offered the option of continuing layoff or being terminated and receiving severance allowance under the terms of Section 16 of the Basic Labor Agreement.[1] Hyjurick elected to stay on layoff status and remained on such until his transfer in 1966 to Seniority Unit 16–18″ Mill Shearing and Straightening.

On December 12, 1969, the plaintiff, William Larkin, filed a grievance with the defendant company as a result of a dispute concerning overtime work which was awarded to John Hyjurick instead of the plaintiff. Plaintiff signed and filed a written grievance in step 2 of the grievance-arbitration procedure set forth in the Basic Labor Agreement between defendant company and defendant union.[2] This grievance was processed in the plaintiff's behalf by the defendant local union up to and including the fourth step of the grievance-arbitration procedure (the step immediately prior to arbitration). When the defendant company denied plaintiff's grievance at the fourth step, the defendant local union, after reevaluating plaintiff's claim, decided to accept the company's decision instead of taking his grievance to arbitration.

■ The law is well settled that a plaintiff, charging that his rights have been violated under Title VII, must prove by the preponderance of the substantive evidence that the defendants have engaged in unlawful employment practices in violation of Title VII, *U. S. A. v. Jacksonville Terminal Company,* 451 F.2d 418 (5th Cir. 1971). In the instant proceeding the plaintiff's complaint centers upon overtime scheduling during a two week period starting December 14, 1969, and ending December 28, 1969, which resulted in a single eight hour overtime turn being assigned to John Hyjurick, a white man instead of to plaintiff, a black man.

It is the plaintiff's contention that the dispute with respect to seniority rights

---

1. The defendants, United Steelworkers of America and United Steelworkers of America, AFL–CIO, Local No. 1557, and United States Steel Corporation, all assert that Hyjurick's decision to retain layoff status was pursuant to Section 16(f) of the Basic Labor Agreement which provides in pertinent part:

"Election Concerning Layoff Status

Notwithstanding any other provision of this Agreement an employee who would otherwise have been terminated in accordance with the applicable provisions of this Agreement and under the circumstances specified in Section 16–A may, at such time, elect to be placed upon layoff status for 30 days or to continue on layoff status for an additional 30 days if he had already been on layoff status. At the end of such 30-day period he may elect to continue on layoff status or to be terminated and receive severance allowance if he is eligible to any such allowance under the provisions of Section 16; provided, however, if he elects to continue on layoff status after the 30-day period specified above, and is unable to secure employment with the Company within an additional 60-day period, at the conclusion of such additional 60-day period he may elect to be terminated and receive severance allowance if he is eligible for such allowance . . . ."

2. When plaintiff filed his grievance on December 12, 1969, he signed a grievance form which provided as follows:

"Subject to the provisions of the labor agreement, I hereby authorize the representative or representatives of the Union which is recognized by the Company as my collective bargaining representative to prosecute this request or claim arising therefrom in this or any other step of the grievance procedure, including arbitration, or to adjust or settle the same."

These provisions were consistent with the language of the Basic Labor Agreement in existence at the time between the defendant union and defendant company which provided in pertinent part:

"As the representative of the employees, the Union may process complaints and grievances through the complaint and grievance procedure, including arbitration, in accordance with this agreement or adjust or settle the same." (Page 3, par. 2, August 1, 1968 P & M Basic Labor Agreement)

between himself and Hyjurick was the direct result of the defendant company's decision to maintain Hyjurick's Rolling Department continuous service date upon his move from Unit 9 to Unit 16, and that the defendant company's actions were arbitrary, capricious, and racially discriminatory. Moreover, plaintiff claims that as a result of this improper application of Section 16, he was forced to initiate a grievance for a position that was rightfully his.

The dispositive issue before this Court is whether or not the defendant company's decision in maintaining Hyjurick's Rolling Department continuous service date, which resulted in giving Hyjurick, a white man, more seniority than the plaintiff, a black man, was based on race and, therefore, in violation of Title VII?

■ Plaintiff does not dispute the fact that he retained his initial Rolling Department service date of September 10, 1951, after an intradepartmental transfer following a one year layoff. Nor is it in dispute that John Hyjurick was one of twenty-one employees from shut down Unit No. 9 who rejected severance allowance and who were later transferred to different seniority units in the Rolling Department. All these men retained their initial Rolling Department service dates upon their intradepartmental moves.[3]

The plaintiff presented no evidence nor did he establish any basis from which the Court could conclude that the defendant company acted arbitrarily or discriminatorily in violation of Title VII by permitting Hyjurick to maintain his continuous service date of July 25, 1941. The record reflects that even during the processing of the plaintiff's grievance it was never asserted that the awarding of greater seniority to Hyjurick rather than the plaintiff was based on race. Moreover, plaintiff's own testimony during the trial of this proceeding was that he would have filed his grievance claim even if Hyjurick had been black.

It is quite apparent from the testimony presented, that neither the defendant company's policy pertaining to intradepartmental transfers or the granting of greater seniority to Hyjurick rather than the plaintiff was founded or based upon any discriminatory practice in violation of Title VII. The record reveals that the defendant company at the Clairton Works had abandoned "Unit Seniority" in favor of departmental seniority since 1962. Accordingly, every person who made an intradepartmental transfer retained his initial continuous service date.

A most careful review of all the evidence fails to reveal any disparative effect upon plaintiff as a result of the company's policy on intradepartmental transfers since the policy in question affected all employees in plaintiff's department with less continuous service whether they were white or black. Moreover, the plaintiff presented no evidence nor can the Court conclude that the defendant company's policy with respect to intradepartmental transfers was artificial, arbitrary, or discriminatory.

Plaintiff's final contention is that because he was a black man, the defendants, United Steelworkers of America and United Steelworkers of America, AFL–CIO, Local No. 1557, failed to process his claim through arbitration and that numerous questions regarding the interpretation of Section 16 of the Basic Labor Agreement went unanswered.

■ The Court can find no merit to this contention. The law is well settled that "a wide range of reasonableness must be allowed to a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Company v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

This Court adheres to the general principle in labor management situations that a union must have the right to preserve its own integrity in good faith rep-

---

**3.** The record reveals that at least three of these men were black.

resentation of its members by freeing it from an obligation to pursue meritless claims. Only when the unions conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith can it be said to be a breach of the statutory duty of fair representation.

"For if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or a jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced." *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

A review of the record reveals that plaintiff has presented no evidence to support his contention that the defendant unions acted in a discriminatory manner in violation of Title VII. On the contrary, the record reflects that throughout the entire arbitration proceedings plaintiff was adequately informed as to what was being done in his behalf. Moreover, plaintiff has failed to establish any evidence that would indicate that the union's failure to present plaintiff's claim to arbitration was motivated by bad faith or based on some discriminatory reason. Mere conclusory allegations of discrimination are insufficient to support the plaintiff's claim. After a most thorough review of all the evidence, the Court is of the firm belief that the defendant unions acted properly and exercised absolute good faith in their decision not to pursue plaintiff's claim to arbitration.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

### ORDER

AND NOW, this 22 day of March, 1976, judgment is hereby entered in favor of the defendants, United Steelworkers of America, United Steelworkers of America, AFL–CIO, Local No. 1557, and United States Steel Corporation, and against the plaintiff, William Larkin. Costs are to be paid by the plaintiff.