658 F.2d 705
 26 Fair Empl.Prac.Cas. 1647,
27 Empl. Prac. Dec. P 32,169
Roald E. TANGREN, William F. Cleghorn, John V. Fletcher,
George R. Lane, Donald W. Hart, James W. Bonds and
Robert W. Whitfield, Plaintiffs/Appellants,
v.
WACKENHUT SERVICES, INCORPORATED, a corporation, and
Independent Guard Association of Nevada, Local No.
L, an unincorporated association and
labor organization,
Defendants/Appellees.
 No. 79-3796.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1981.
Decided Oct. 5, 1981.
Rehearing Denied Nov. 12, 1981.
 
 William L. McGimsey, Albright, McGimsey & Stoddard, Las Vegas, Nev., for plaintiffs/appellants.
 Kenneth W. Anderson, Los Angeles, Cal., Larry C. Johns, Johns & Johns, Las Vegas, Nev., argued, for defendants/appellees; Gibson, Dunn, Crutchen, Los Angeles, Cal., on brief.
 Alexander Prager, Mark Flynn, Washington, D.C., amicus curiae.
 Appeal from the United States District Court for the District of Nevada.
 Before CHAMBERS and CANBY, Circuit Judges, and BATTIN,* District Judge .
 CANBY, Circuit Judge.
 
 
 1
 The sole issue posed in this case is whether a particular affirmative action program violates Title VII, 42 U.S.C. § 2000e et seq. The program was undertaken by a company with no prior history of racial discrimination and was adopted as part of a collective bargaining agreement. It modified an existing seniority system in order to reduce or eliminate the system's adverse impact on minorities and women. Appellants, seven non-minority guards employed by the company, Wackenhut Security, Inc. (Wackenhut), appeal the decision of the district court, 480 F.Supp. 539 upholding the program and granting summary judgment to Wackenhut. We affirm.
 
 
 2
 In February 1965, Wackenhut was awarded a government contract to provide security services at certain Atomic Energy Commission (AEC) locations in southern Nevada. Wackenhut acquired the security operation from Federal Services, Inc. (Federal), and retained Federal's employees. Federal had not hired any minority workers prior to 1962 and when Wackenhut undertook the contract only six of 226 (2.7%) security personnel were of minority status. By comparison, the 1960 census indicated that non-whites comprised 13% of Clark County, the relevant geographic labor market.
 
 
 3
 After undertaking the contract, Wackenhut began actively to recruit minority guards. This affirmative action program was fairly successful and during the period 1965-1972, 22% of all guards hired were members of minorities. Because of frequent reductions in force and a provision in the collective bargaining agreement between Wackenhut and the Independent Guard Association of Nevada (IGAN) requiring that all layoffs be in order of reverse seniority, however, the increased hirings did not substantially increase the number of minority guards actually on the job. In 1972, only 11 of 229 (5%) security guards were minorities. The 1970 census indicated that minorities accounted for 16% of the population and 14% of the labor force in Clark County. The retention rate for minority workers was only 16%; the corresponding rate for non-minority employees was 44%.
 
 
 4
 In 1970 the AEC reviewed the company's affirmative action program. The Commission concluded that Wackenhut was not in substantial compliance with the affirmative action guidelines set forth in Executive Order 11246 because the layoff procedures had a disparate impact on minority employees. In order to increase minority retention, Wackenhut undertook to change those provisions.
 
 
 5
 During the 1972 collective bargaining negotiations, Wackenhut insisted on an affirmative action clause which would override the seniority system when female and minority representation decreased below certain percentages. The union initially resisted the proposed change, but eventually the union leadership and the majority of its members accepted the provision.
 
 
 6
 Tangren asserts that the seniority override agreement violates Title VII by unfairly favoring minority employees over more senior non-minority workers. We disagree. To be sure, Title VII protects both blacks and whites. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Neither the statute nor the case law, however, requires that the courts immunize seniority rights from all affirmative action programs.[1] United States v. City of Miami, 614 F.2d 1322, rehearing en banc granted, 625 F.2d 1310 (5th Cir. 1980); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Humphrey v. Moore, 375 U.S. 335, 345-50, 84 S.Ct. 363, 369-372, 11 L.Ed.2d 370 (1964).
 
 
 7
 In United Steelworkers v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), the Supreme Court declared that Title VII does not forbid private employers and unions from voluntarily agreeing upon affirmative actions plans that accord racial preferences in order to achieve reasonable minority representation in the work force. Tangren contends that Weber is distinguishable, however, because (1) the Wackenhut program was not voluntarily accepted by either the union or the affected employees, and (2) unlike Weber, the Wackenhut employees are losing existing seniority rights. We find these distinctions insubstantial and without merit.
 
 
 8
 Contrary to Tangren's assertions, the IGAN-Wackenhut agreement was voluntarily entered. That the union initially rejected the override provision or that the union may have ultimately accepted the clause only because of economic pressure does not alter our assessment. "(T)he use of economic pressure by the parties to a labor dispute is ... part and parcel of the process of collective bargaining." NLRB v. Insurance Agents, 361 U.S. 477, 495, 80 S.Ct. 419, 430, 4 L.Ed.2d 454 (1960).[2] The general counsel of the National Labor Relations Board examined Wackenhut's collective bargaining position and concluded that it had not committed any unfair labor practices.
 
 
 9
 Nor is the failure of the affected non-minority employees to assent to the override provision of any consequence. Plainly, rights established under Title VII are "not rights which can be bargained away either by a union, by an employer, or by both acting in concert." Robinson v. Lorillard Corp., 444 F.2d 791, 799 (4th Cir.), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). In this instance, however, no Title VII rights have been violated. Seniority is merely an economic right which the unions may elect to bargain away. See United States v. Hayes International Corp., 415 F.2d 1038 (5th Cir. 1969); Cooper and Sobol, Seniority and Testing under Fair Employment Laws: A General Approach to Objective Criteria of Hiring and Promotion, 82 Harv.L.Rev. 1598, 1604-06 (1969).
 
 
 10
 Tangren's alternative distinction, that unlike Weber appellants are losing the benefits of their seniority rights, does not compel us to invalidate the Wackenhut plan. It is settled that seniority rights are not vested property rights and that these rules can be altered to the detriment of any employees or group of employees by a good faith agreement between the company and the union. Humphrey v. Moore, 375 U.S. at 345-50, 84 S.Ct. at 369-372; Ford Motor Co. v. Huffman, supra. This is particularly true where the changes are undertaken to provide greater representation of minorities. "(A) collective bargaining agreement may ... (e)nhanc(e) the seniority status of certain employees for purposes of furthering public policy interests beyond what is required by statute, even though this will to some extent be detrimental to the expectations acquired by other employees under the previous seniority agreement." Franks v. Bowman, 424 U.S. 747, 778-79, 96 S.Ct. 1251, 1270-71, 47 L.Ed.2d 444 (1976); see also United States v. Hayes International Corp., supra.
 
 
 11
 Finally, we reject Tangren's contention that the Wackenhut plan unnecessarily trammels the rights of non-minority workers. The Wackenhut program is carefully contoured to accomplish its limited objective insuring that any reductions in force do not disproportionately impact on minorities. As such it is an appropriate response to the problem inherent in a reverse seniority layoff system and does not violate Title VII. The decision of the district court is affirmed.
 
 
 
 *
 The Honorable James Battin, United States District Judge, for the District of Montana, sitting by designation
 
 
 [1]
 Tangren's contention that International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), mandates invalidating the Wackenhut plan is meritless. In Teamsters, the Court held that § 703(h), 42 U.S.C. § 2000e-2(h), immunizes from attack an otherwise bona fide seniority system that affords no constructive seniority to employees discriminated against prior to the effective date of the act. The court did not, however, prohibit the employer from agreeing of his own accord to modify the seniority system
 
 
 [2]
 We view the question of voluntariness as a false issue. Although the decision in Weber referred to the agreement as voluntary, that discussion was in the context of whether Title VII requires employers to adopt affirmative action programs. In fact, the Kaiser-Steelworkers plan was not adopted in the absence of economic coercion. See Weber, 443 U.S. at 210, 99 S.Ct. at 2731 (Blackmun, J., concurring). Using economic coercion to obtain the assent of a union or its members does not ipso facto require the courts to find the plan prohibited by Title VII. See Zaslawsky v. Board of Education of Los Angeles, 610 F.2d 661 (9th Cir. 1979). Nor does anything in the reasoning of Weber invalidate a racially preferential affirmative action program imposed unilaterally by the employer on its own motion, where the program is not a subject of collective bargaining