Sherman Earl HAYS, et al., Plaintiffs,

v.

NATIONAL ELECTRICAL CONTRAC-
TORS ASSOCIATION, INC., et
al., Defendants.

No. C 84 0880 EFL.

United States District Court,
N.D. California.

Nov. 21, 1984.

SUMMARY JUDGMENT

LYNCH, District Judge.

This matter is before the court on the defendant International Brotherhood of Electrical Workers, Local 595's motion for summary judgment. This controversy stems from the adoption of a 40-mile radius rule by the Appeals Committee of Local 595. The plaintiffs claim that this conduct constitutes a breach of the union's duty of fair representation and evidences the "on-going arbitrary, dishonest and capricious handling of hiring hall ... eligibility."

BACKGROUND

To understand the union's decision to restrict Group I eligibility to those electricians who maintained residences within 40 miles of the union hall, it is necessary to review the employment conditions facing Local 595 electricians. Plentiful employment opportunities in the late 1970's attracted transient electricians from all over the country. When the work began to decline during the recent recession, these non-local "travellers" remained in the local market and gained Group I status. Those members of Local 595 who lived in the bay area and who had longstanding roots in the

area became concerned that their ability to obtain jobs in Alameda County would be jeopardized.

Group I employees, those given the greatest hiring preference, are defined in the 1981 Agreement between NECA and Local 595. Article IV, section 405 requires Group I applicants to be residents of the geographical area constituting the "normal construction labor market." Section 4.08 defines "normal construction labor market" to include Alameda County plus the commuting distance adjacent thereto, which includes the area from which the normal labor supply is secured.

In October, 1982, the Appeals Council of Local 595 ruled that the term "commuting distance" would be defined as "not more than forty (40) air miles from the Local's dispatch office." The Appeals Committee relied on the authorization contained in Section 4.17 of the Agreement to permit this rulemaking. This clause empowers the Appeals Committee to issue procedural rules for the conduct of its business so long as they do not add to, subtract from or modify in any way the provisions of the collective bargaining agreement.

The plaintiffs allege that the adoption of this 40 mile rule and its discriminatory application violate the union's statutory duty to represent fairly those union members who live outside of this area. In addition, they claim that the imposition of this rule is itself part of an ongoing scheme of arbitrary and discriminatory hiring hall practices.

DISCUSSION

While the plaintiffs do not segregate their arguments into two separate counts, the conduct complained of alleges two separate cognizable claims. For clarity, the court will deal with each of these separately.

1. Duty of Fair Representation

The plaintiffs argue that the exclusion of electricians from Group I because they lived more than 40 miles from the union hall violates the collective bargaining agreement and constitutes a breach of the duty of fair representation. The conduct complained of includes the original promulgation of the rule by the Appeals Council and the actual application of the new rule by the union representatives.

■ A union violates its duty of fair representation only if its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The Ninth Circuit has defined as arbitrary, conduct that is "without a rational basis", made with reckless disregard for the rights of individual employees, or "egregious" and "unrelated to legitimate union interests." *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082–90 (9th Cir.1978).

■ In the present case, the court does not find as a matter of law that the conduct complained of here can be considered arbitrary. The Appeals Council, in promulgating the rule, had as its purpose the legitimate interest of protecting the employment opportunities of the vast majority of its members. In addition, the court finds that a 40 mile radius is not without rational basis. As surveys completed by the union demonstrate, only 20 people currently listed in Group I (out of a group of as many as 700) live more than 40 miles from the Union Hall. Thus, the adoption of a forty mile rule is a reasonable clarification of the Agreement definition requiring Group I electricians to reside within "the area from which the normal labor supply is secured."

■ In addition, the court does not agree with the plaintiff's position that the Appeals Board exceeded its authority to promulgate procedural rules when it adopted the 40 mile radius requirement. As the plaintiffs conceed, the Appeals Board has generated several restrictions on hiring hall practices in the past within the purview of their section 7.14 authority. For example, the Local has "procedural rules" that require employees to sign in at the hall in person, to appear at least once a week to maintain their place on the hiring list, and to be dispatched to new jobs from

the hall. These restrictions are all intended to protect work opportunities for local area electricians. The plaintiffs conceeded, in fact, that the Appeals Board was authorized to place residence restrictions on Group I electricians. Their only objection, it appears is that the 40 mile limit chosen excludes their clients. To this dispute, the court finds that the Appeals Board's decision to adopt a 40 mile rule constitutes a reasonable definition of the term "commuting distance." It does not add to or subtract from the Agreement. Instead, it provides a clear standard to electricians as to where they should reside in order to secure Group I eligibility.

As the union did not exceed its authority or conduct its affairs in an arbitrary fashion, adoption of the rule comes within the "wide range of reasonableness," *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), accorded unions in the conduct of their affairs.

The plaintiffs also cite, in support of their claim for a breach of the duty of fair representation, the discriminatory and uneven administration of the new work rule by the union officers. To the extent that this conduct constitutes a separate cause of action under § 8 of the National Labor Relations Act, it will be discussed below. The plaintiff's allege, however, that this discriminatory conduct also provides a basis for their claim under section 301.

A review of the affidavits submitted by both sides fail to support the plaintiff's allegations that the 40 mile rule has not been applied uniformly. Only one case, Allen Redgrave, supports the plaintiff's contention that out-of-area electricians are classified in Group I. The improper classification of one individual, which has since been corrected, does not rise to the level of discriminatory conduct. Nor does the fact that some permanently employed local members (who have not appeared at the hiring hall since the union imposed the new rule) have not been reclassified rise to the level of discriminatory conduct. As the union's affidavits assert, these individuals are known to the dispatchers. Should any

of these persons return to the union hall and ask to be classified as Group I, the standing instructions are to require them to fill out a questionnaire and provide their addresses. If the address given is different than that contained in the Union's records, proof of residence is required.

As there exists no genuine issue of material fact in dispute and as the plaintiffs fail to present sufficient evidence to support a claim for breach of a duty of fair representation, the court grants the defendants motion for summary judgment on this claim.

2. Arbitrary and Discriminatory Hiring Hall Practices

██ The plaintiffs allegations that the 40 mile radius rule evidences a continuing scheme of arbitrary and discriminatory hiring practice is cognizable under sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act. *Radio Officers' Union v. NLRB*, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954). As such, there is no jurisdiction in this court. As the Supreme Court stated in *San Diego Bldg. Trades v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959), when an activity is "arguably" subject to section 8 of the Act, the federal courts must defer to the exclusive competence of the NLRB. The court, therefore, dismisses that part of the plaintiffs complaint that alleges discriminatory hiring hall practices.

CONCLUSION

Finding that there is no genuine dispute as to any material fact, and that the conduct cited by the plaintiffs does not constitute a breach of the union's duty of fair representation, the court GRANTS the defendants motion for summary judgment. In addition, the court dismisses for lack of subject matter jurisdiction, the element of the plaintiffs' complaint that alleges discriminatory hiring hall practices.

IT IS SO ORDERED.