CHERYL LARSON AND ALL OTHERS SIMILARLY SITUATED, APPELLANTS, V. THE TRANSIT AUTHORITY OF THE CITY OF OMAHA, DOING BUSINESS AS METRO AREA TRANSIT, ET AL., APPELLEES.

364 N.W.2d 33

Filed March 22, 1985.   No. 84-135.

Edward F. Fogarty of Fogarty, Lund & Gross, and Mary Kay Green, for appellants.

Soren S. Jensen, John S. Sowiaczek, and J. Russell Derr, of Erickson & Sederstrom, P.C., for appellee Transit Authority of Omaha.

Robert E. O'Connor, Jr., of Robert E. O'Connor & Associates, for appellees Transport Workers Union of America Local 223 and Transport Workers Union of America.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellants, Cheryl Larson and all others similarly situated, are former employees of The Transit Authority of the City of Omaha, doing business as Metro Area Transit (MAT). On June 30, 1977, the contract between MAT and the Transport Workers Union of America Local 223 (Union), expired and the Union and MAT were unable to agree on a new contract. In July of 1977 MAT filed a petition with the Commission of Industrial

Relations (CIR), asking that the commission establish wages to be contained in a 1977-79 collective bargaining agreement between MAT and the Union. The Union responded by joining in the request. During this impasse, the bus system continued operating as usual. MAT increased salaries generally by 6 percent, effective July 17, 1977, and again in July of 1978. In June of 1979 the CIR rendered a decision and established rates for the period July 1, *1977*, to June 30, *1979*, which were higher than what MAT had in fact paid during that period. MAT appealed the decision of the CIR to this court. While the appeal was pending, MAT and the Union sought to negotiate a contract for the next period, July 1, 1979, to June 30, 1981. In August of 1979 they entered into an interim agreement and then a full contract for the period July 1, 1979, to June 30, 1981. By the terms of the interim agreement, the rates previously ordered by the CIR for the 1977-79 period would become effective July 1, 1979, and be used as the basis for setting the rates for 1979-81. Additionally, a cash settlement was to be paid to employees active on July 1, 1979, based upon a percentage of gross wages "earned in the 104 week period closest to July 1, 1977, and June 30, 1979." No contract was ever formally entered into for 1977 and 1978. The Union, however, agreed to accept the wages paid, pursuant to letters from MAT dated July 27, 1977, and July 10, 1978, and the appeal from the decision of the CIR was dismissed.

Larson then commenced this action to seek to recover for herself and "others similarly situated" the right to "back wages" for those who had left the company between July of 1977 and August 11, 1979. Following trial to the district court for Douglas County, Nebraska, the petition was dismissed. It is from that order which Larson and others now appeal. They assign two errors. The first assignment is that the district court erred in not deciding MAT was liable for backpay to the employees who worked between July 1, 1977, and July 1, 1979, but who had left MAT by July 1, 1979. In this regard, appellants maintain that the district court erred in deciding that former employees were not entitled to the difference between what they were actually paid and the rate the *CIR* determined they should have been paid, *or an approximation thereof* such as the cash

settlement payoff to employees on the payroll July 1, 1979. The second assignment by appellants is that the district court erred in not finding that the Union failed to represent the plaintiffs in good faith and without discrimination. We believe that the district court correctly resolved all of the issues, and for that reason the decision of the district court must be affirmed.

Part of the difficulty with appellants' claim is that they have attempted to meld together a host of facts, some of which are totally unrelated. As an example, they maintain that the district court should have ordered MAT to pay former employees the difference "between what they were actually paid and the rate the C.I.R. determined they should have been paid, or an approximation thereof such as the cash settlement payoff to employees on the payroll July 1, 1979." Brief for Appellants at 2. In essence, Larson and others wanted the district court to make a contract for them out of whole cloth. The district court had no way of directing MAT to pay anyone a rate previously determined by the CIR for the period 1977 to 1979, in view of the fact that the parties to that agreement, MAT and the Union, resolved their differences and agreed to something else. While in an appropriate case the district court can enter an order enforcing a previously entered order of the CIR, see *IBEW Local 763 v. Omaha P.P. Dist.*, 209 Neb. 335, 307 N.W.2d 795 (1981), it cannot require the parties to enter into a contract different from the one they have in fact agreed upon. Once the parties had resolved their differences and put the 1977-79 contract behind them, there was nothing for the district court to order in that regard. It is clear that while appellants would like to read into the 1979 agreement a retroactive pay raise, there is nothing in the agreement or the documents to in any way support such a position. Quite to the contrary, the agreement is clear that the payment is not a retroactive pay raise.

Appellants have cited a number of cases to the effect that where backpay is awarded retroactively to a *specific date* for all employees, even an employee who is no longer employed is entitled to share in the retroactive pay for the period actually worked. There is, however, no language in the 1979 agreement which provides for any retroactive backpay to a specific date that would be of benefit to appellants. Setting aside for the

moment the question of whether the Union could enter into such an agreement, we are unable to find any language which would indicate to us that there was any intent by either party to make any retroactive payment. As a matter of fact, the contract clearly provides that the letters of July 27, 1977, and July 10, 1978, constitute the contracts for those years. Appellants continually argue that where an employee performs services for an employer, there is an implied promise to pay a reasonable sum. That issue is not at all relevant in the instant case. The employees were all paid a rate set by the employer, MAT, though disputed by the Union. There is simply no way in which the district court could have arbitrarily directed MAT to pay employees at a rate different from that which had been established for the work, absent agreement by the parties. Appellants' first assignment of error is simply without merit.

The real question that needs to be decided is whether the district court erred when it found that the evidence failed to establish a conspiracy and that the Union did not fail to represent Larson and others in good faith and without discrimination. We believe an examination of the record in light of the applicable law resolves this question contrary to appellants' position.

The matter of labor negotiations is oftentimes a matter of compromise, wherein certain benefits are obtained while others are lost by both sides. This is the very essence of the collective bargaining procedure. Historically, the courts have recognized that while everyone may not be treated equally, so long as there has not been any intent to arbitrarily discriminate against one group in favor of another, a contract entered into pursuant to collective bargaining will be enforced. In *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337-38, 73 S. Ct. 681, 97 L. Ed. 1048 (1953), the U.S. Supreme Court said:

> Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals. A

bargaining representative, under the National Labor Relations Act, as amended, often is a labor organization but it is not essential that it be such. The employees represented often are members of the labor organization which represents them at the bargaining table, but it is not essential that they be such. The bargaining representative, whoever it may be, is responsible to, and owes complete loyalty to, the interests of all whom it represents. In the instant controversy, International represented, with certain exceptions not material here, all employees at the Louisville works, including both the veterans with, and those without, prior employment by Ford, as well as the employees having no military service. Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

And in *Johnson v. Air Line Pilots in Serv. of N. W. Airlines*, 650 F.2d 133, 137 (8th Cir. 1981), the U.S. Court of Appeals for the Eighth Circuit said:

Under the facts of this case, we affirm the granting of the summary judgment in favor of ALPA on the basis of the union's good faith attempts to represent the conflicting rights of the various groups it represented. Where a union must negotiate meritorious but conflicting claims, "and no clear showing has been made of bad faith in making a choice between [two or more] claims, it can not be said that in making the choice it made, the union unfairly represented one group."

In the *Johnson* case the eighth circuit court of appeals specifically found that where a union made a good faith attempt to represent conflicting rights of various groups, including laid off employees, in negotiating and accepting a

collective bargaining agreement, the union did not breach its duty of fair representation in its negotiations with the employer or in its final acceptance of a collective bargaining agreement which did not extend seniority or recall rights of certain laid off employees. See, also, *Duggan v. International Association of Machinists*, 510 F.2d 1086 (9th Cir. 1975); *Van Leeuwen v. United States Postal Service*, 628 F.2d 1093 (8th Cir. 1980).

In the instant case the record is devoid of any evidence which would support a claim of conspiracy or lack of good faith by the Union. The Union attempted to negotiate a contract for its members for the years 1977-79. As is often the case, the period was nearly expired and a new contract period beginning before the previous dispute was resolved. The Union, when presented with an opportunity to get a new contract early for the 1979-81 period, agreed to submit the settlement proposal to the rank and file, who approved the contract. That hardly amounts to a conspiracy. Obviously, the interests of the present employees, on the one hand, and the former employees, on the other hand, were miles apart. All the former employees could be interested in was money. They had no interest in bargaining for future wages or benefits. While at first blush it may seem "unfair" of MAT to make such an offer, a fact we do not pass on, it was not illegal. Had the rank and file so desired, they were free to turn the contract offer down. They chose not to do so. The Union was presented with the difficult task of representing two groups having conflicting interests. Whenever that situation arises, some group may feel "shortchanged." That may be unfair, but it is not illegal.

We cannot say that because the Union sought to protect the interests of those who remained over the interests of those who had left, the Union thereby acted discriminatorily or without justification, or in bad faith. The decision of the trial court was correct. The judgment is affirmed.

AFFIRMED.