**Richard James FREEMAN, Plaintiff,**

v.

**O'NEAL STEEL, INC., and United Steelworkers of America, Defendants.**

**Civ. A. No. 76–G–0721–S.**

United States District Court,
N. D. Alabama, S. D.

June 30, 1977.

---

Ralph E. Coleman, Birmingham, Ala., for plaintiff.

George C. Longshore, Cooper, Mitch & Crawford, Birmingham, Ala., for United Steelworkers.

William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for O'Neal Steel.

## MEMORANDUM OPINION

GUIN, District Judge.

This is a civil action for injunctive relief, damages, declaratory judgment, and other appropriate relief, brought pursuant to the Labor Management Relations Act of 1947, § 301, 29 U.S.C. § 185, and predicated upon alleged violations by the defendants, O'Neal Steel, Inc. (O'Neal), and United Steelworkers of America (Union), (hereinafter sometimes referred to collectively as "the defendants.")

The court, having fully considered the pleadings, all of the testimony, exhibits, and other evidence adduced in the course of this case, and having carefully reviewed the briefs, and having heard the arguments of counsel, now makes and finds the following facts, makes the following conclusions of law, and enters the following Memorandum Opinion:

## MEMORANDUM OPINION

This action, seeking injunctive relief and damages, is predicated upon alleged violations by the defendants of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185). The action is properly before the court, subject matter jurisdiction existing under 28 U.S.C. § 1337, as an act arising under an act of Congress regulating commerce. Jurisdiction and venue were not contested by the parties.

The plaintiff is a black, unsophisticated, uneducated (third grade) and employee of O'Neal Steel, Inc., and a member of the United Steelworkers of America. Plaintiff had been employed, until his termination by defendant O'Neal, for a period of 27 years. Defendant O'Neal is a Delaware corporation, qualified to do business in the state of Alabama, with its principal place of business being located in Birmingham, Alabama. Defendant Union is a labor organization doing business in the state of Alabama. Plaintiff was employed by O'Neal from sometime during 1947 until January 17, 1975, when he was discharged as a result of an altercation in the plant with another employee, named Clarence Landrum. Landrum was also discharged from employment as a result of said altercation.

The altercation, which occurred on January 3, 1975, arose over a dispute between the plaintiff and Landrum as to a company-distributed calendar in the plaintiff's possession. Landrum attempted to take plaintiff's calendar from him and a scuffle ensued. Landrum grabbed the plaintiff's collar and the plaintiff grabbed Landrum's shoulder. Landrum had an open knife in his other hand. Plaintiff put his other hand on Landrum, jerking him to the ground. Landrum got up and stabbed the plaintiff in the stomach with his knife. This altercation took place as a direct result of an attempt by Landrum to take from plaintiff property (a calendar) which legally belonged to him.

An investigation into this incident was conducted by O'Neal and, both persons being found at fault, Landrum was discharged on January 8, 1975, and plaintiff was discharged on January 17, 1975. As a result of this discharge, plaintiff lost a substantial interest in the O'Neal pension plan which would have become vested had he

continued in the employ of O'Neal. During the employment period from 1969 through 1976, no other employees were discharged for fighting on company property.

Plaintiff was a member of and was represented by the United Steelworkers of America and Local Union No. 3004 of United Steelworkers of America. This local is predominantly white. The Union contract with O'Neal contains a grievance procedure consisting of three steps, and a right of appeal to arbitration. In discharge and disciplinary suspension cases, the grievant may file the grievance in step two of the grievance procedure and bypass step one. The grievance on behalf of Mr. Freeman was filed in step two of the grievance procedure on January 21, 1975. Mr. Landrum did not file a grievance. The grievance was denied in step two by plant superintendent McCarley, and it was processed by the Union to step three. The grievance was denied in step three on February 10, 1975.

By letter dated February 27, 1975, the Union appealed the grievance to arbitration. After the Union and Freeman were unable to agree upon a list of arbitrators to compose an arbitration panel, the Union requested an arbitration panel from the Federal Mediation and Conciliation Service, from which Freeman and the Union would alternate striking names until the remaining name became the arbitrator for the case. The requested list of names to compose the arbitration panel was received by the Union and Freeman from the Federal Mediation and Conciliation Service. That list included H. Hobart Grooms, Jr., one of the witnesses in this case and who, on a previous occasion, had ruled in favor of the plaintiff regarding a grievance he had filed against O'Neal. By letter dated March 26, 1975, the Union advised O'Neal that it was withdrawing the grievance from arbitration.

The staff representative for the United Steelworkers of America with the responsibility for handling the plaintiff's grievance was William Caldwell.[1] Prior to withdrawal of the plaintiff's grievance from arbitration, Caldwell met with the Union committee responsible for such matters. This committee was composed of two whites and one black, in addition to Caldwell. Caldwell presented to the committee other arbitration cases involving fighting. All of the cases he presented to the committee favored the company and held against the grievant, despite the fact that there are many cases regarding the same subject which have held for the grievant and against the company. This committee made the decision to withdraw plaintiff's grievance from arbitration, and did so by letter dated March 26, 1975, as mentioned above.

As a result of the knifing inflicted upon the plaintiff by Landrum, medical and hospital bills in excess of $1,200.00 were incurred. Mr. Freeman was successful in obtaining a jury verdict in a civil action against Clarence Landrum.

Plaintiff had been discharged by O'Neal on a previous occasion (July 30, 1971) for refusal to work overtime. He filed a grievance as a result of this discharge, and was reinstated without pay by the arbitrator who presided over that grievance, H. Hobart Grooms, Jr.

The court will first address itself to the question of whether the plaintiff has received fair representation by the defendant Union. As exclusive bargaining agent for the plaintiff, as set out in the collective bargaining agreement between the Union and O'Neal, the Union had a statutory duty to fairly represent the plaintiff's grievance. Under the fair representation doctrine, as set out in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967),

. . . the exclusive agent's statutory authority to represent all members of a

---

1. It is the function of a staff representative to assume responsibility for the overall management of a grievance, to act as a spokesman for the union and to provide a liaison function between the union and the company. Further, he is to serve as a "resident expert" on matters of the nature as that currently before the court and to advise the union and its various committees on the action they should take with regard to these matters.

designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

386 U.S. at 177, 87 S.Ct. at 910, 17 L.Ed.2d at 850. Thus, the duty which the plaintiff alleges has been breached is defined by three distinct standards of conduct; a violation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* 386 U.S. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. *See also Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; *Ford Motor Company v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

The origin of the duty of fair representation is statutory, first recognized 20 years ago in a series of cases involving racial discrimination by unions certified as exclusive bargaining agents under the Railway Labor Act. *Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1943). The Supreme Court subsequently held that the provisions of the National Labor Relations Act included a similar duty. *See Ford Motor Company v. Huffman, supra.* Freeman's complaint alleged a breach by the Union of a duty grounded on federal statutes, and therefore federal law governs his cause of action. *Vaca v. Sipes, supra.*

■ The above-mentioned duty of representation does not confer an absolute right on an employee to have his grievance carried through all stages of the grievance procedure. There has been considerable debate on the extent of the duty owed to the employee.

Some [authorities] have suggested that every individual employee should have the right to have his grievance taken to arbitration. Others have urged that the union be given substantial discretion (if the collective bargaining agreement so provides) to decide whether a grievance should be taken to arbitration, subject only to the duty to refrain from patently

wrongful conduct such as *racial discrimination or personal hostility.*

*Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 917, 17 L.Ed.2d at 858. [Emphasis added.] *See also Turner v. Air Transport Dispatchers' Association,* 468 F.2d 297 (5th Cir. 1972). The individual employee does not have the right to compel arbitration of his grievance, regardless of its merits. As the court in *Boone v. Armstrong Cork Company,* 384 F.2d 285 (5th Cir. 1967) stated, citing *Vaca v. Sipes, supra,* a prerequisite to a Section 301 suit in such a case is allegation and proof that the union arbitrarily, discriminatorily or in bad faith failed to exhaust the contractual procedure.

■ The circumstances surrounding the withdrawal of the plaintiff's grievance by the Union committee prior to completion of arbitration support a finding of bad faith by the Union and arbitrary conduct on its part, and in fact appear to the court to be both racially motivated (and therefore discriminatory) and the product of the personal hostility of Caldwell toward plaintiff. The facts surrounding the altercation between the plaintiff and Mr. Landrum certainly support the inference that had the case been presented to a fair-minded arbitrator, the plaintiff possessed an excellent chance of winning the arbitration. This contention is supported by the testimony of H. Hobart Grooms, Jr., a labor arbitration expert called by O'Neal. Upon questioning by the court, Mr. Grooms stated that Mr. Freeman would have a reasonable chance to win such an arbitration. Further, Mr. Grooms was a member of the arbitration panel from which the actual arbitrator would have been selected. Mr. Grooms had already restored the plaintiff to his job during a past arbitration. It was certainly arbitrary for the Union not to proceed at least to the point of determining who the actual arbitrator would have been.

The Union representative, William Caldwell, displayed an openly hostile attitude toward the plaintiff during his testimony in the trial of this cause. This hostility was plainly evident in Mr. Caldwell's demeanor on the witness stand, as well as by the

logical inferences the court has drawn from his testimony, including the fact that he in effect told plaintiff, "don't call us, we'll call you," intending to get rid of plaintiff and his complaint rather than to make a good faith effort to resolve it satisfactorily.

Indeed, Caldwell's entire conduct of this matter may be characterized as evidencing "bad faith." As mentioned above, in presenting the findings of previous arbitration cases to the Union committee dealing with this matter, Mr. Caldwell presented only cases adverse to the plaintiff's interest, while ignoring in his presentation any of the cases which support the plaintiff's position. This is particularly crucial in view of the fact that the Union committee was dominated and controlled by Caldwell. The composition of the committee was such that the members, essentially ignorant of such matters, had to rely heavily upon Mr. Caldwell's recommendations and experience in analyzing the factual circumstances surrounding any given situation and in reaching a conclusion as to how best to proceed. Further, the plaintiff was not present at the meeting at which the decision not to go forward with his arbitration was made, nor was he represented by anyone to present evidence on his behalf at this meeting. Caldwell's actions and demeanor, and the lack of any rational motive for his mistreatment of plaintiff, lead the court to further conclude that Caldwell was motivated by racial bias as well as personal hostility. For the purposes discussed above, Caldwell was the alter ego of the Union.

Finally, although there was conflicting testimony on this point, the court finds that the committee misrepresented to the plaintiff that his grievance had been turned down by the arbitrator, when in fact the grievance had been withdrawn by the Union committee. The totality of the above referenced circumstances leads the court to conclude that the Union has breached its duty of fair representation to the plaintiff.

■ Since the court has found that the Union's failure to resort to arbitration was itself a violation of the Union's statutory duty to the employee, the plaintiff is entitled to recover against the Union. However, having so held, there is no reason to exempt the employer from contractual damages which it would otherwise have had to pay, simply because the Union has breached its duty to the employee, if the plaintiff's discharge was a breach of the employment contract. *See Vaca v. Sipes, supra.* Turning, then, to a consideration of whether the discharge of the plaintiff by O'Neal constitutes a breach of contract by the employer within the purview of a Section 301 breach of duty action, pursuant to the Taft Hartley Act, the court finds that the plaintiff's discharge was arbitrary and discriminatory and in breach of his employment contract.

■ In reaching this conclusion, the court has carefully reviewed the testimony and facts surrounding the plaintiff's discharge. As stated above, the defendant was protecting his personal property at the time of the attack by Landrum. Although the evidence reveals that plaintiff struck the first blow, at the time he struck this first blow he was being threatened by an open knife. (The defendants have admitted in their agreed summary of the facts in this case, as set forth in the pretrial order on file in this cause, that Landrum was threatening the plaintiff with a knife prior to the time the plaintiff struck and jerked Landrum to the ground.) Although the court may consider the defense of property of such small value to demonstrate poor judgment, or lack of wisdom, this court recognizes the well-established right of a person to defend himself from a felonious attack and the theft of his property, whatever its value. As the court in *State v. Wilson,* 5 Penn. 77 (Del. 1904) 62 A. 227, 231 stated,

> The law accords to everyone the right to protect his person from assault and injury by opposing force to force, and he is not obliged to wait until he is struck by an impending blow; for, if a weapon be raised in order to shoot or strike, or the danger of other personal violence be imminent, the party in such imminent danger may protect himself by striking the first blow for the purpose of repelling and preventing the attempted injury.

The court specifically finds that plaintiff was acting in defense of his property and that the opposing force or measure of defense which he used was not unreasonably disproportionate to the requirements of the occasion. He clearly should not have been discharged by O'Neal for the assertion of this right.

Finally, as discussed above, even the defendant company's own expert, H. Hobart Grooms, Jr., who was called to give his opinion as a labor arbitrator as to the probable result of an arbitration case such as the plaintiff's, upon questioning by the court stated that under the circumstances he felt the plaintiff had a reasonable chance to win the arbitration. Therefore, the court cannot find that the plaintiff was discharged for just or proper cause.

 The appropriate remedy for an employer's breach of the employment contract and for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach. The difficulty here, as in the *Vaca* case, lies in fashioning an appropriate scheme of remedies. It is the court's opinion that both the Union and O'Neal are equally culpable in their wrongful actions toward the plaintiff. Accordingly, the court holds the Union and O'Neal jointly and severally liable for any amount of damages awarded to the plaintiff. In this regard, the court is of the opinion that the plaintiff is entitled to reinstatement to his employment with O'Neal Steel, payment of all back wages (less wages earned from other employment) from the time of his discharge to present, payment of back contributions to O'Neal's pension fund and credit of all time from plaintiff's wrongful discharge to the present toward obtaining a vested interest in the pension fund, and, finally, seniority as if the plaintiff had suffered no termination of employment from O'Neal Steel.

The parties shall have 30 days from the issuance of this order to submit to the court an amount based upon the evidence before the court which constitutes the back wages owing to the plaintiff. Further, the parties shall also submit to the court within 30 days the amount of back contributions due to be paid into the O'Neal pension fund.