David A. JOHNSON et al., Appellants,

v.

The AIR LINE PILOTS IN the SERVICE OF NORTHWEST AIRLINES, INC., as represented by The Air Line Pilots Association, International, and Northwest Airlines, Inc., Appellees.

No. 80–1510.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1981.

Decided May 28, 1981.

Rehearing and Rehearing En Banc Denied June 24, 1981.

---

**134**

Kelley, Torrison & O'Neill, by James C. O'Neill (argued), Saint Paul, Minn., for appellants.

Gary Green (argued), and John F. Depenbrock, Jr., Washington, D. C., for defendant-appellee Air Line Pilots Association, Int'l.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., Peyton H. Moss (argued), Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendant-appellee Northwest Airlines, Inc.

Before LAY, Chief Judge, ROSS, Circuit Judge, and VAN PELT, Senior District Judge.*

ROSS, Circuit Judge.

This is an appeal from summary judgments granted in favor of both defendants, Air Line Pilots Association, International (ALPA) and Northwest Airlines, Inc.

The appellants are a group of former pilot employees of Northwest Airlines who were laid off in 1970 and who have not flown for the airline since that time. The appellants' seniority rights and their rights of recall to pilot status with the airline expired on June 30, 1978, and were not extended in the August 15, 1978 collective bargaining agreement between the union and the airline. They filed suit in the district court[1] seeking to have the agreement held invalid insofar as it had terminated their rights of employment with Northwest Airlines.

The appellants alleged that ALPA, their exclusive bargaining representative, twice breached its duty of fair representation under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., during the contract negotiations, and that Northwest Airlines refused to bargain in good faith over the issues

* The Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1. The Honorable Donald D. Alsop, United States District Court for the District of Minnesota, Fourth Division.

governing appellants' continued rights of employment. Both defendants moved for summary judgment and the motions were granted in Judge Alsop's Memorandum Order of June 5, 1980.

On appeal, the appellants argue that the district court erred in granting the summary judgments on the basis of an improper standard of liability, and that the court erroneously resolved genuine issues of material fact. We have carefully reviewed the record, the briefs, the arguments of the parties and Judge Alsop's Memorandum Order. Although we apply a somewhat different standard in assessing the union's conduct towards the appellants, we are satisfied that there were no genuine issues of material fact before Judge Alsop and that the defendants were entitled to a judgment as a matter of law. Accordingly, we affirm the order of the district court.

The factual background of this case, as stipulated by the parties and as set forth in the district court's order, is as follows: The appellants, 181 in all, were hired by Northwest Airlines in 1969 and 1970. By June 30 of 1970, 155 of the pilots had been laid off, for various reasons, before any of them had completed the twelve month probationary period of accumulated service with the airline. Since membership in ALPA was contingent upon the successful completion of the probationary period, none of the appellants ever became an active member of the union. However, 143 of the appellants had completed training and were assigned to flying duty before they were laid off. They were thus entitled to seniority rights under the terms of the collective bargaining agreement then in effect:

Seniority shall begin to accrue from the date a pilot is first assigned to air line flying duty and shall continue to accrue during such period of duty.

\* \* \* \* \* \*

A pilot who has been laid off may retain his accumulated system seniority \* \* \* except that seniority rights shall be forfeited after five (5) years of continuous layoff.

The remaining 38 pilots had not completed training and consequently had not acquired seniority rights.

In July of 1970, another union struck Northwest, causing losses in the airline's passenger traffic. Shortly thereafter, the remaining appellants were laid off. In 1972, when the collective bargaining agreement between ALPA and Northwest expired, ALPA went on strike. A new collective bargaining agreement was signed on October 3, 1972, and a Letter Agreement signed on that same day provided that seniority and recall rights would be granted to the 38 appellants who previously had not acquired those rights.

The 1972 agreement became amendable on July 1, 1974. None of the appellants had been recalled by that time, and they were within a year of forfeiting their seniority rights. On July 17, 1975, ALPA once again went on strike. An agreement was reached by the parties on August 7, 1975, and an accompanying Letter Agreement provided that the seniority and recall rights of the appellants would be extended beyond the five year period until June 30, 1978. Northwest had requested a proviso in the Letter Agreement that no further extensions would be requested, but ALPA refused to accept it.

The 1975 agreement became amendable on July 1, 1977. At that time, 231 pilots, including all of the appellants, were still on layoff status. Negotiations began in April of 1977 and continued for approximately a year until ALPA struck the airline on April 29, 1978.

During the year of prestrike negotiations, ALPA sought extension of the appellants' seniority rights on several occasions. The union's first written proposals included one which would have provided indefinite recall rights for the pilots on layoff status, and this proposal was raised at a negotiating session on October 4, 1977. Northwest discussed the proposal but cited several reasons for rejecting it. At a session on October 18, 1977, ALPA proposed that the seniority rights be altered to provide ten years of seniority retention rather than

five. This proposal was discussed at negotiating sessions on December 13, 1977, and April 17, 1978, but Northwest ultimately rejected it.

Prior to ALPA's April 29, 1978 strike, several of the 231 pilots were recalled from layoff status by the airline. In March of 1978, 50 pilots were recalled whose rights were senior to those of the appellants. On April 14 and 21, 1978, recall notices were sent to 20 of the appellants. Several more pilots could have expected recall notices, appellants argue, due to requirements for the replacement of retiring pilots and contemplated increases in the airline's flight service. The April 29 strike prevented any additional recalls, however, and also caused Northwest to cancel the April 14 and 21 notices.

Following the strike, ALPA continued to demand an extension of the appellants' recall rights, and Northwest continued to reject the proposals. ALPA raised the issue several times in May and June, and again in July and August, after the appellants' seniority rights had expired. Modifications of the proposal were offered by ALPA and Northwest but none proved satisfactory. The August 15 agreement contained no extension of the appellants' employment rights.

In their complaint, the appellants charge ALPA with two separate breaches of its duty of fair representation. The first is in the union's decision to strike at a time of increased employment opportunities; the second breach is in the form and manner of the final agreement and the motivation of the union in adopting it. The appellants also argue that Northwest is not entitled to take the benefit of a contract with a union which has breached its duty of fair representation, and that the airline refused to bargain in good faith over the issues affecting appellants' employment rights.

Judge Alsop found no evidence supporting the appellants' unfair representation claims. First, even though ALPA officials were aware that further pilot recalls were imminent and that the appellants' seniority was nearing expiration, the appellants' allegations concerning ALPA's decision to strike were found to be "conclusory" and without "any supporting facts which show[ed] ALPA's lack of good faith." The court pointed out that two prior strikes had actually benefited the appellants and that the 1975 extension of their recall rights had taken place after some of the appellants' rights had already expired. Moreover, even in light of the increased employment opportunities, Judge Alsop found "no evidence suggesting that the decision to strike was made by ALPA in order to discriminate against the plaintiffs."

Second, Judge Alsop found that the union had not breached its duty to the appellants in its negotiations with Northwest or in its final acceptance of the August 15 bargaining agreement. The court's factual conclusions clearly indicate that the appellants had several opportunities to present their views to the union, and it is obvious that the union made a good faith attempt to keep the recall issue open throughout the negotiations. Finally, Judge Alsop found no improper motive in the union's acceptance of the final agreement:

There is nothing in the record which indicates that ALPA agreed to the contract settlement because it desired to discriminate or injure the plaintiffs. ALPA clearly had nothing to gain by its failure to obtain plaintiffs' recall rights, except to the extent that its other pilots were benefited by the agreement. "Absent a showing of hostile discrimination, there is no breach of the duty of fair representation merely because the negotiated agreement fails to satisfy all persons represented by the union." *Jackson v. Trans World Airlines*, 457 F.2d 202 at 204 (2nd Cir. 1972). *Accord, Mavis v. Brotherhood of Ry. Airline & SS Clerks*, 585 F.2d 926 (8th Cir. 1978).

We agree with Judge Alsop that ALPA did not breach the duty of fair representation owed to the appellants. We disagree with Judge Alsop's decision, however, to the extent that portions of it are seemingly premised on the fact that the appellants failed to establish "hostile discrimination"

on the part of the union. The Supreme Court has long held the view that a union has wide discretion in its representation of the bargaining unit and that a union which is acting in good faith will not be held in breach of its duty of fair representation simply because some parties are disadvantaged by its actions:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

■ Under the facts of this case, we affirm the granting of the summary judgment in favor of ALPA on the basis of the union's good faith attempts to represent the conflicting rights of the various groups it represented. Where a union must negotiate meritorious but conflicting claims, "and

no clear showing has been made of bad faith in making a choice between [two or more] claims, it can not be said that in making the choice it made, the union unfairly represented one group." [2] *Buchholtz v. Swift & Co.,* 609 F.2d 317, 327 (8th Cir. 1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). Accordingly, we reject appellants' arguments that the granting of summary judgment in favor of ALPA was improper.

■ We have also considered appellants' challenges to the district court's granting of a summary judgment in favor of Northwest Airlines, and find them to be without merit. Since we have determined that ALPA did not breach its duty of fair representation, we need not address the issue of whether the airline may be deprived of the benefit of the contract on the basis of the union's alleged breach of duty. Finally, we reject the claim that Judge Alsop improperly resolved genuine issues of material fact as to Northwest's duty to bargain with ALPA over the issue of the extension of appellants' seniority rights. The record clearly supports Judge Alsop's conclusions on this issue [3] and we hold that the granting of the summary judgment was proper.

---

**2.** Although the petition for rehearing en banc was denied in *Buchholtz v. Swift & Co.,* 609 F.2d 317 (8th Cir. 1979), two members of this court dissented and two others filed an opinion concurring with this alternate holding concerning the union's good faith settlement of conflicting claims:

> As long as conflicting claims of various groups of employees are arguably meritorious, we must permit the union and the company to negotiate a settlement of the claims or submit them to arbitration; and when they have negotiated a settlement of all claims in good faith, then we cannot entertain an employee's action in federal court to recover for an alleged breach of contract with respect to the settled claims. To do so would be contrary to established labor policy. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

> Of course, the one exception to the rule is where bad faith has been clearly shown. That is not the case here.
> *Id.* at 328.

**3.** Judge Alsop set forth his conclusions as follows:

> The court concludes that the plaintiffs were not employees of NWA [Northwest] following June 30, 1978, and that NWA did not have a duty to bargain with ALPA on the issue of extension of plaintiffs' seniority rights since that was not a mandatory subject of bargaining following that date.
> However, even if NWA did have a duty to bargain with ALPA regarding extension of plaintiffs' seniority rights following June 30, 1978, the court concludes that NWA did in fact bargain with ALPA on that issue. * * * Although NWA was adamant in its desire not to concede on the recall issue, NWA did discuss the merits of the issue several times after June 30, 1978, and NWA did listen and consider the different proposals submitted by ALPA on the recall issue. While the Railway Labor Act requires bargaining, it does not require agreement. *See Virginian Ry. Co. v.*

Accordingly, the order of the district court is affirmed.

*System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).